NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
MATTHEW W. O'BRIEN (Cal. Bar No. 261568)
Assistant United States Attorney
Environmental and Community Safety Crimes Section
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-8644
    Facsimile: (213) 894-0141
    E-mail:    Matthew.O'Brien@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED
CLERK, U.S. DISTRICT COURT
06/17/2020
CENTRAL DISTRICT OF CALIFORNIA
BY: _____AP_____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>         v.<br><br>ROYAL TRADING, INC.,<br>  aka "Royal Adult Video," and<br>DIPAKKUMAR PATEL,<br>  aka "Dipak Patel,"<br><br>       Defendants. | No. CR 2:20-cr-00234-DMG<br><br>PLEA AGREEMENT FOR DEFENDANT ROYAL TRADING, INC. |

1.    This constitutes the plea agreement between defendant ROYAL TRADING, INC., also known as "Royal Adult Video" ("defendant"), and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2.    Defendant agrees to:

a.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to a single-count information in this matter, in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with a violation of Title 18, United States Code, Section 371, conspiracy to commit an offense against the United States, namely, introducing misbranded drugs into interstate commerce, in violation of 21 U.S.C. §§ 331(a), 352, and 333(a)(1), a Class A misdemeanor offense.

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with Pretrial Services, the United States Probation Office, and the Court.

g.   Make restitution and not seek the discharge of any restitution obligation, in whole or in part, in any present or future bankruptcy proceeding.

h.   Pay the applicable special assessment at or before the time of sentencing unless defendant lacks the ability to pay and prior to sentencing submits a completed financial statement on a form to be provided by the USAO.

i.    Recommend and advocate to the Court that defendant be sentenced as provided in paragraph 12.

<u>THE USAO'S OBLIGATIONS</u>

3.    The USAO agrees to:

a.    Not contest facts agreed to in this agreement.

b.    Abide by all agreements regarding sentencing contained in this agreement.

c.    Except for criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371), not further criminally prosecute defendant for violations arising out of defendant's conduct described in the factual basis. Defendant understands that the USAO is free to criminally prosecute defendant and/or any of its managers or members for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement. Defendant agrees that at the time of sentencing the Court may consider any uncharged conduct in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed after consideration of the Sentencing Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

d.    Recommend and advocate to the Court that defendant be sentenced as provided in paragraph 12.

<u>COMPANY AUTHORIZATION</u>

4.    Defendant represents that it is authorized to enter into this agreement.  On or before the change of plea hearing pursuant to this agreement, defendant shall provide the USAO and the Court with a notarized legal document certifying that defendant is authorized to enter into and comply with all of the provisions of this agreement.

Such resolution(s) shall designate DIPAKKUMAR "DIPAK" PATEL as the company representative who is authorized to take the actions specified in this agreement, including pleading guilty on behalf of the company, and shall also state that all legal formalities for such authorizations have been observed.

<u>ORGANIZATIONAL CHANGES AND APPLICABILITY</u>

5.    This agreement shall bind defendant, its successor entities (if any), parent companies, and any other person or entity that assumes the liabilities contained herein ("successors-in-interest"). Defendant, or its successors-in-interest, if applicable, shall provide the USAO and the United States Probation Office for the Central District of California with immediate notice of any name change, business reorganization, sale or purchase of assets, divestiture of assets, or similar action impacting their ability to pay the fine or affecting this agreement.  No change in name, change in corporate or individual control, business reorganization, change in ownership, merger, change of legal status, sale or purchase of assets, or similar action shall alter defendant's responsibilities under this agreement.  Defendant shall not engage in any action to seek to avoid the obligations and conditions set forth in this agreement.

<u>NATURE OF THE OFFENSE</u>

6.    Defendant understands that for defendant to be guilty of the crime charged in the single-count information, that is, conspiracy, in violation of Title 18, United States Code, Section 371, the following must be true: (1) beginning on or about an unknown date, and ending on or about January 30, 2017, there was an agreement between two or more persons to introduce and cause the introduction

of misbranded drugs into interstate commerce, in violation of 21 U.S.C. §§ 331(a), 352, 333(a)(1); (2) defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and (3) one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy, with agreement on a particular overt act that was committed.

<u>PENALTIES AND RESTITUTION</u>

7.    Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 371, is:  a five-year period of probation; a fine of $200,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $125.

8.    Defendant understands that defendant will be required to pay full restitution to the victim(s) of the offense to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result of any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty.

1

## SUSPENSION, REVOCATION, AND DEBARMENT

2     9.   Defendant understands that if defendant holds any

3 regulatory licenses or permits, the convictions in this case may

4 result in the suspension or revocation of those licenses and permits.

5 The USAO makes no representation or promise concerning suspension or

6 debarment of defendant from contracting with the United States or

7 with any office, agency, or department thereof.  Suspension and

8 debarment of organizations convicted under various federal

9 environmental protection and criminal statutes is a discretionary

10 administrative action solely within the authority of the federal

11 contracting agencies.  Defendant understands that unanticipated

12 collateral consequences such as this will not serve as grounds to

13 withdraw defendant's guilty plea.

14                              ## FACTUAL BASIS

15     10.  Defendant admits that defendant is, in fact, guilty of the

16 offense to which defendant is agreeing to plead guilty.  Defendant

17 and the USAO agree to the statement of facts provided below and agree

18 that this statement of facts is sufficient to support a plea of

19 guilty to the charge described in this agreement and to establish the

20 Sentencing Guidelines factors set forth in paragraph 12 below but is

21 not meant to be a complete recitation of all facts relevant to the

22 underlying criminal conduct or all facts known to either party that

23 relate to that conduct.

24     At all times relevant herein, defendant was based in

25 Catonsville, Maryland, and owned and operated by co-defendant

26 DIPAKKUMAR PATEL ("PATEL").  PATEL controlled all aspects of

27 defendant's business, including purchasing, sales, and shipping.

28

Defendant's business included the distribution of male sexual enhancement pills to retail locations across the United States.

**A.  Defendant's Scheme with John Lee**

From early 2013 through early 2017, defendant purchased male sexual enhancement pills from John Lee, who manufactured and sold the pills from locations in the Central District of California.  Lee manufactured the pills using Tadalafil that he had smuggled into the United States from suppliers in China.  While the typical Cialis prescription contains 25-85 mg of Tadalafil per pill, Lee included up to 350-400 mg of Tadalafil in his pills.  None of Lee's pills had been tested or approved by the Food and Drug Administration ("FDA").  Lee also included Sildenafil, the active pharmaceutical ingredient in Pfizer, Inc.'s prescription drug Viagra, that he had smuggled into the United States from China, as an ingredient in the male sexual enhancement pills that he supplied to defendant.

Lee did not disclose the presence of Tadalafil (or Sildenafil) on the packaging of the pills that he supplied to defendant.  While the packaging differed somewhat for each of the pill brands, each contained basically the same text in its labeling.  All of the labels for the pills that LEE supplied to defendant stated "no prescription necessary" and listed as ingredients a "proprietary blend" of 13 specified herbal ingredients, plus a "special blend."  None of the labels disclosed that the pills contained Tadalafil or that the pills were drugs for which a prescription was necessary.

Defendant typically purchased three types of pills from LEE: white pills, gold pills, and silver pills.  Each color pill had a different brand name, strength, and price (white was the weakest and cheapest; silver was the strongest and most expensive).  When the FDA

announced that one of Lee's pill brands was tainted because it contained undisclosed active pharmaceutical ingredients (including Tadalafil), Lee would begin manufacturing the same colored pill but with a different brand name.  Thus, while the brand names of Lee's pills changed over the years, the formulas for the white, gold, and silver pills remained the same.  For example:

- After the FDA announced in December 2015 that Lee's white "X Again" pills were tainted because they contained undisclosed Tadalafil, defendant began buying a replacement brand of pills from Lee, branded "X Monster," which had the same formula and price as the tainted "X Again" pills and similar labeling that failed to disclose the presence of Tadalafil.

- After the FDA announced in August 2016 that Lee's gold "Master Zone" pills were tainted because they contained undisclosed Tadalafil, defendant began buying a replacement gold pill from Lee, branded "Royal Master," which had the same formula and price as the tainted "Master Zone" pills and similar labeling that failed to disclose the presence of Tadalafil.

- After the FDA announced in August 2016 that Lee's silver "One More Knight" pills were tainted because they contained undisclosed Tadalafil, defendant began buying a replacement silver pill from Lee, branded "Own the Knight," which had the same formula and price as the tainted "One More Knight" pills and similar labeling that failed to disclose the presence of Tadalafil.

Pursuant to requests from defendant, Lee shipped the following quantities of misbranded pills from the Central District of California to defendant in Catonsville, Maryland:

8

| Date | White Pills ("X Again" & "X Monster") | Gold Pills ("Master Zone" & "Royal Master") | Silver Pills ("One More Knight" & "Own the Knight") |
|---|---|---|---|
| 5/15/2013 | 1,200 | 1,200 | |
| 6/14/2013 | | 425 | |
| 7/2/2013 | | 1,200 | |
| 7/8/2013 | | 1,200 | |
| 7/9/2013 | 1,800 | | |
| 8/12/2013 | | 1,800 | |
| 10/2/2013 | 600 | 1,200 | |
| 3/26/2014 | | 600 | 600 |
| 5/7/2014 | 600 | | 1,200 |
| 7/15/2014 | | 1,200 | |
| 8/14/2014 | 1,200 | | |
| 10/6/2014 | | | 1,200 |
| 12/29/2014 | 600 | 1,200 | 1,800 |
| 12/3/2015 | 600 | | 1,200 |
| 1/6/2016 | 1,200 | | 600 |
| 2/4/2016 | 3,000 | | |
| 2/24/2016 | | 1,200 | 1,200 |
| 4/13/2016 | | | 1,200 |
| 6/7/2016 | 1,200 | | 1,200 |
| 6/13/2016 | 600 | | |
| 7/14/2016 | | | 1,200 |
| 7/26/2016 | 1,800 | | 1,200 |
| 8/18/2016 | | | 1,800 |
| 8/26/2016 | | 1,800 | 1,200 |
| 9/15/2016 | | | 1,100 |
| 10/6/2016 | 1,200 | | |
| 10/10/2016 | 1,200 | | |
| 10/13/2016 | 3,000 | | |
| 10/28/2016 | 600 | | 1,200 |
| 11/1/2016 | 600 | | |
| 11/7/2016 | 1,200 | | |
| 1/5/2017 | | | 1,200 |
| 1/13/2017 | | | 600 |
| 1/23/2017 | | | 600 |
| 1/30/2017 | | | 600 |

In total, from 2013 through February 2017, defendant purchased at least 82,100 misbranded pills from Lee for approximately $188,595. Defendant resold these pills to retail locations across the United States.  Defendant's gross gain on its resales of these pills was at least $64,122.  Defendant knew, or should have known, that all of the pills that it bought from Lee were misbranded and contained undisclosed Tadalafil.

On July 18, 2017, Lee called PATEL and apologized for being out of touch but said that he had had an issue with the FDA posting all of his products on its website.  When Lee told PATEL that he would have new products available soon, PATEL said that he was interested. On another call on September 19, 2017, Lee told PATEL that he was having problems importing Tadalafil from China, but that he would soon have the "same three items."  In response, PATEL, on behalf of defendant, expressed interest in buying Lee's pills once he knew the names and details.

**B.    Defendant's Smuggling Scheme**

In early 2018, a federal agent informed defendant that Lee's pills were misbranded because they contained Tadalafil and Sildenafil and defendant should no longer distribute misbranded pills.

No later than November 2018, defendant began ordering large quantities of male sexual enhancement products from a supplier in India so that defendant could distribute them to its retail clients in the United States.  The products included Kamagra pills and gels, which contained the drugs Sildenafil and Dapoxetine.  Products containing Sildenafil or Dapoxetine are drugs that require a prescription and supervision from a licensed physician in the United States.  Defendant intended to sell the Kamagra products to its

retail clients so that they could sell them to consumers, as defendant had done with Lee's misbranded pills.  Kamagra products are legal in India but are prohibited to import, sell, or distribute in the United States, as the FDA made clear in public announcements in 2009 and 2017.

The packaging for the Super Kamagra pills that defendant ordered stated that each of the pills contained 100 milligrams of Sildenafil and 60 milligrams of Dapoxetine.  The packaging for the Kamagra "Oral Jelly" packs that defendant ordered stated that they each contained 100 milligrams of Sildenafil with flavors including "Cola, Apricot, Peach, Passion Fruit, Coconut, Mixed Fruits, [and] Honey." Statements on the package's directions for use included "Use strictly under Medical supervision" and "Dosage:  As directed by the Physician."

Defendant also ordered "Sexforce Sildenafil Oral Jelly," another male sexual enhancement product that is legal in India but illegal in the United States.  The packaging on the Sexforce boxes as well as the individual 100 milligram "Oral Jelly" packs that defendant ordered stated "Rx," "contains Sildenafil citrate USP," "Equivalent to Sildenafil 100mg," and "Dosage:  As directed by the physician." The packs came in seven flavors:  mango, mint, strawberry, chocolate, lemon, orange, and cherry.

The government seized the following six shipments of Kamagra and Sexforce products sent from defendant's supplier in India to defendant in Maryland:

//

//

//

| Seizure Date | Invoice Date | Manifested As | Actual Contents | Parcel Weight | Declared Value | Appraised Value |
|---|---|---|---|---|---|---|
| 11/21/2019 | Unknown | "Health supplement" | 4,000 Super Kamagra pills | 5 kg | Unknown | $6,254 |
| 12/3/2019 | 11/25/2019 | "Health supplement" | 2,100 Kamagra "Oral Jelly" packs | 16 kg | $150 | $9,765 |
| 1/2/2020 [two parcels] | 12/20/2019 & 12/21/2019 | "Health supplement" | 4,200 Kamagra "Oral Jelly" packs | 16 kg & 16 kg | $150 & $150 | $19,530 |
| 3/4/2020 | 2/22/2020 | "Health supplement" | 1,960 Sexforce "Oral Jelly" packs | 16 kg | $120 | $9,114 |
| 3/5/2020 | 2/26/2020 | "Health supplement" | 2,100 Kamagra "Oral Jelly" packs | 16 kg | $150 | $9,765 |

On December 18, 2019, CBP mailed a seizure notice to defendant, informing defendant of the seizure on November 21, 2019.  The notice specified that the shipment has been "seized under the provisions of 19 U.S.C. (United States Code) § 1595a(c)(1), Merchandise Imported Contrary to Law, and is subject to forfeiture under 21 U.S.C. § 881 for underlying violations of 21 U.S.C. § 952(b), Importation of Controlled Substances, 21 U.S.C. § 829(b), Prescription Drugs, and 21 U.S.C. § 381(a), Imports and Exports."  Despite receiving the seizure notice (and knowing that several of its recent orders had been seized), defendant continued to order and import banned substances (including Kamagra and Sexforce products) in 2020, when its supplier in India shipped at least six additional parcels to him, each of which was manifested as "Health supplements" weighing 14 or 16 kilograms.

The six seized shipments were a small fraction of the Kamagra and Sexforce products that defendant ordered from its supplier in India.  Between November 2018 and March 2020, defendant's supplier in India shipped at least 98 packages to defendant, each of which was manifested as "Kamagra oral jelly," "Health supplement (oral jelly)," or "Health supplement."  Like the six seized packages, most of the other packages' declared weight was 16 kilograms.  Like the six seized packages, most of the other packages' declared value was $150.

Defendant knew that most, if not all, of the consumers buying the Kamagra and Sexforce products that defendant was smuggling into the United States would be using the products without the supervision of a physician.

<u>SENTENCING FACTORS</u>

11.  Defendant and the USAO agree and stipulate that, pursuant to United States Sentencing Guidelines ("U.S.S.G.") §§ 8C2.1 and 8C2.10, the sentencing guidelines are not applicable in determining the fine for an organization violating 21 U.S.C. §§ 331(a), 333(a)(1), but all other sections of Chapter 8 of the U.S.S.G. are applicable in this case, including the provisions regarding probation.  Defendant understands that in determining defendant's sentence, the Court is also required to consider the factors set forth in Title 18, United States Code, Sections 3553(a) and 3572, including the kinds of sentences and sentencing ranges established under the Sentencing Guidelines.

12.  Pursuant to Chapter 8 of the Sentencing Guidelines and the factors set forth in Title 18, United States Code, Sections 3553(a) and 3572, including the nature and circumstances of the offense and the history and characteristics of the defendant, the need for the

sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant, the parties agree that defendant should be sentenced as follows:

a.    Probation:  Defendant should be sentenced to probation for a term of five years with conditions to be fixed by the Court.

b.    Compliance Program:  As part of its conditions of probation, defendant shall immediately implement a compliance program in accordance with Exhibit B.  Compliance with requirements set forth in Exhibit B should be a condition of probation.

c.    Criminal Fine:  Defendant should pay a total criminal fine of $200,000.  The criminal fine shall be paid by certified check(s) or wire transfer(s) to the Clerk of the United States District Court for the Central District of California.  Confirmation of the completed payment(s) shall be provided to the USAO.

d.    Special Assessment:  Defendant shall pay a total special assessment of $125.

WAIVER OF CONSTITUTIONAL RIGHTS

13.  Defendant understands that by pleading guilty, defendant gives up the following rights:

a.    The right to persist in a plea of not guilty.

b.    The right to a speedy and public trial by jury.

c.    The right to be represented by counsel at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel at every other stage of the proceeding.

14

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.   The right to confront and cross-examine witnesses against defendant.

f.   The right to testify and to present evidence in opposition to the charge, including the right to compel the attendance of witnesses to testify.

g.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

14.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

15.   Defendant agrees that, provided the Court imposes a total sentence on the count of conviction of no more than the statutory maximum, defendant gives up the right to appeal any portion of the sentence.

16.   The USAO agrees that, provided that all portions of the sentence are at or below the statutory maximum specified above, the USAO gives up its right to appeal any portion of the sentence.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

17.   Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

<u>EFFECTIVE DATE OF AGREEMENT</u>

18.   This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

<u>BREACH OF AGREEMENT</u>

19.   Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of

defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

20.  Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then:

a.  Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.  Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.  Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under

the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

### COURT AND PROBATION OFFICE NOT PARTIES

21.  Defendant understands that the Court and the United States Probation Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

22.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 12 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

23.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the

maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

24.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

<u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

25.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

NICOLA T. HANNA
United States Attorney

/s/                                                    June 16, 2020
_____      _____
MATTHEW W. O'BRIEN                          Date
Assistant United States Attorney

*Dipak C. patel*                            6-12-20
_____      _____
DIPAKKUMAR PATEL                            Date
Authorized Representative of
Defendant ROYAL TRADING, INC.

*M. a. Bourgeois*                           6/15/2020
_____      _____
JOHN A. BOURGEOIS                           Date
Attorney for Defendant ROYAL
TRADING, INC.

<u>CERTIFICATION OF DEFENDANT</u>

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences

1  of entering into this agreement.  No promises, inducements, or
2  representations of any kind have been made to me other than those
3  contained in this agreement.  No one has threatened or forced me in
4  any way to enter into this agreement.  I am satisfied with the
5  representation of my attorney in this matter, and ROYAL TRADING, INC.
6  is pleading guilty because it is guilty of the charge and wishes to
7  take advantage of the promises set forth in this agreement, and not
8  for any other reason.

9

10  _Dipak C. patel_____        _6-12-20_____
    DIPAKKUMAR PATEL                        Date
11  Authorized Representative of
    Defendant ROYAL TRADING, INC.
12

13

14

15              CERTIFICATION OF DEFENDANT'S ATTORNEY

16      I am defendant ROYAL TRADING, INC.'s attorney.  I have carefully
17  and thoroughly discussed every part of this agreement with my client.
18  Further, I have fully advised my client of its rights, of possible
19  pretrial motions that might be filed, of possible defenses that might
20  be asserted either prior to or at trial, of the sentencing factors
21  set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines
22  provisions, and of the consequences of entering into this agreement.
23  To my knowledge: no promises, inducements, or representations of any
24  kind have been made to my client other than those contained in this
25  agreement; no one has threatened or forced my client in any way to
26  enter into this agreement; my client's decision to enter into this
27  agreement is an informed and voluntary one; and the factual basis set
28

                                21

1  forth in this agreement is sufficient to support my client's entry of

2  a guilty plea pursuant to this agreement.

3

4  _____          __6__/__15__/__2020__

   JOHN A. BOURGEOIS                           Date

   Attorney for Defendant ROYAL

5  TRADING, INC.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                 FOR THE CENTRAL DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,          CR No.

11            Plaintiff,                I N F O R M A T I O N

12            v.                        [18 U.S.C. § 371: Conspiracy]

13   ROYAL TRADING, INC.,               [CLASS A MISDEMEANOR]
        aka "Royal Adult Video," and
14   DIPAKKUMAR PATEL,
        aka "Dipak Patel,"
15
              Defendants.
16

17        The United States Attorney charges:

18                          [18 U.S.C. § 371]

19                           [ALL DEFENDANTS]

20   A.    INTRODUCTORY ALLEGATIONS

21        At times relevant to this Information:

22        1.    Defendant ROYAL TRADING, INC., also known as ("aka") "Royal

23   Adult Video" ("ROYAL"), was located at 1030 Leslie Avenue in

24   Catonsville, Maryland.  Defendant ROYAL distributed male sexual

25   enhancement pills to retail locations across the United States.

26        2.    Defendant DIPAKKUMAR PATEL, aka "Dipak Patel"("PATEL"), was

27   the owner and manager of defendant ROYAL and held himself out as the

28

person most responsible for the day-to-day operations of defendant
ROYAL.

3.    Co-conspirator #1 supplied male sexual enhancement pills to
defendants ROYAL and PATEL.  Co-conspirator #1 owned and operated
several businesses between 2011 and 2017 for the purpose of
manufacturing and distributing male sexual enhancement pills that he
marketed as herbal remedies but that in fact contained undisclosed
Tadalafil, an active pharmaceutical ingredient.  Each of Co-
conspirator #1's pill businesses was located in the Central District
of California.

4.    Co-conspirator #2 worked for Co-conspirator #1 as an office
assistant from approximately 2014 to 2017.

B.   THE OBJECT OF THE CONSPIRACY

5.    Beginning on a date unknown to the United States Attorney
and continuing to on or about January 30, 2017, in Los Angeles
County, within the Central District of California, and elsewhere,
defendants ROYAL and PATEL, together with others known and unknown to
the United States Attorney, including Co-conspirators #1 and #2,
knowingly conspired and agreed to introduce and cause the
introduction of misbranded drugs into interstate commerce, in
violation of Title 21, United States Code, Sections 331(a), 352,
333(a)(1).

C.   MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE
     ACCOMPLISHED

6.    The object of the conspiracy was to be accomplished, in
substance, as follows:

a.    Co-conspirator #1 would import shipments of bulk
Tadalafil from suppliers in China.

b.   After Co-conspirator #1 received the bulk Tadalafil in the Central District of California, he would cause the bulk Tadalafil to be manufactured into pills that Co-conspirators #1 and #2 would sell in packages whose labeling did not disclose the presence of Tadalafil, and whose labeling falsely stated that no prescription was necessary, even though the pills were in fact prescription drugs.

c.   Defendants ROYAL and PATEL would place orders for the misbranded pills with Co-conspirators #1 and #2.

d.   Co-conspirator #2 would fulfill the orders placed by defendants ROYAL and PATEL by shipping the misbranded drugs from the Central District of California to defendants ROYAL and PATEL in Catonsville, Maryland.

e.   When the Food and Drug Administration ("FDA") announced that a certain brand of Co-conspirator #1's pills distributed by defendants ROYAL and PATEL was tainted because the pills contained undeclared Tadalafil, defendants ROYAL and PATEL would begin buying a replacement brand of pills, with an identical formula (including Tadalafil) but different brand name, from Co-conspirators #1 and #2.  For example:

i.   After the FDA announced in December 2015 that Co-conspirator #1's white "X Again" pills were tainted because they contained undisclosed Tadalafil, defendants ROYAL and PATEL would begin buying a replacement brand of pills from Co-conspirators #1 and #2, branded "X Monster," which had the same formula and price as the tainted "X Again" pills and similar labeling that failed to disclose the presence of Tadalafil.

ii.   After the FDA announced in August 2016 that Co-conspirator #1's gold "Master Zone" pills were tainted because they

3

contained undisclosed Tadalafil, defendants ROYAL and PATEL would begin buying a replacement gold pill from Co-conspirators #1 and #2, branded "Royal Master," which had the same formula and price as the tainted "Master Zone" pills and similar labeling that failed to disclose the presence of Tadalafil.

iii. After the FDA announced in August 2016 that Co-conspirator #1's silver "One More Knight" pills were tainted because they contained undisclosed Tadalafil, defendants ROYAL and PATEL would begin buying a replacement silver pill from Co-conspirators #1 and #2, branded "Own the Knight," which had the same formula and price as the tainted "One More Knight" pills and similar labeling that failed to disclose the presence of Tadalafil.

f.   Defendants ROYAL and PATEL would resell and distribute the replacement pills to retail locations across the United States, despite knowing that the pills had the same formula and misleading packaging as the misbranded pills that the FDA had declared were tainted.

D.   OVERT ACTS

7.   On or about the following dates, in furtherance of the conspiracy and to accomplish its object, defendants ROYAL and PATEL, and others both known and unknown to the United States Attorney, including Co-conspirators #1 and #2, committed various overt acts within the Central District of California and elsewhere, including, but not limited to, the following:

//

//

//

//

Overt Acts Nos. 1 Through 35: On or about the following dates, pursuant to orders made by defendants ROYAL and PATEL, Co-conspirators #1 and #2 shipped the following quantities of misbranded pills from the Central District of California to defendants ROYAL and PATEL in Catonsville, Maryland:

| Overt Act | Date | White Pills ("X Again" & "X Monster") | Gold Pills ("Master Zone" & "Royal Master") | Silver Pills ("One More Knight" & "Own the Knight") |
|---|---|---|---|---|
| 1 | 5/15/2013 | 1,200 | 1,200 | |
| 2 | 6/14/2013 | | 425 | |
| 3 | 7/2/2013 | | 1,200 | |
| 4 | 7/8/2013 | | 1,200 | |
| 5 | 7/9/2013 | 1,800 | | |
| 6 | 8/12/2013 | | 1,800 | |
| 7 | 10/2/2013 | 600 | 1,200 | |
| 8 | 3/26/2014 | | 600 | 600 |
| 9 | 5/7/2014 | 600 | | 1,200 |
| 10 | 7/15/2014 | | 1,200 | |
| 11 | 8/14/2014 | 1,200 | | |
| 12 | 10/6/2014 | | | 1,200 |
| 13 | 12/29/2014 | 600 | 1,200 | 1,800 |
| 14 | 12/3/2015 | 600 | | 1,200 |
| 15 | 1/6/2016 | 1,200 | | 600 |
| 16 | 2/4/2016 | 3,000 | | |
| 17 | 2/24/2016 | | 1,200 | 1,200 |
| 18 | 4/13/2016 | | | 1,200 |
| 19 | 6/7/2016 | 1,200 | | 1,200 |
| 20 | 6/13/2016 | 600 | | |
| 21 | 7/14/2016 | | | 1,200 |
| 22 | 7/26/2016 | 1,800 | | 1,200 |
| 23 | 8/18/2016 | | | 1,800 |
| 24 | 8/26/2016 | | 1,800 | 1,200 |
| 25 | 9/15/2016 | | | 1,100 |
| 26 | 10/6/2016 | 1,200 | | |
| 27 | 10/10/2016 | 1,200 | | |
| 28 | 10/13/2016 | 3,000 | | |
| 29 | 10/28/2016 | 600 | | 1,200 |

5

| Overt Act | Date | White Pills ("X Again" & "X Monster") | Gold Pills ("Master Zone" & "Royal Master") | Silver Pills ("One More Knight" & "Own the Knight") |
|---|---|---|---|---|
| 30 | 11/1/2016 | 600 | | |
| 31 | 11/7/2016 | 1,200 | | |
| 32 | 1/5/2017 | | | 1,200 |
| 33 | 1/13/2017 | | | 600 |
| 34 | 1/23/2017 | | | 600 |
| 35 | 1/30/2017 | | | 600 |

NICOLA T. HANNA
United States Attorney


BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

JOSEPH O. JOHNS
Assistant United States Attorney
Chief, Environmental and
Community Safety Crimes Section

MARK A. WILLIAMS
Assistant United States Attorney
Deputy Chief, Environmental and
Community Safety Crimes Section

MATTHEW W. O'BRIEN
Assistant United States Attorney
Environmental and Community
Safety Crimes Section

# EXHIBIT B

**Exhibit B**

**<u>Compliance Program</u>**

Defendant ROYAL TRADING, INC. ("defendant"), hereby agrees to the following additional conditions of probation:

1.      To establish and maintain compliance with the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 <u>et seq.</u> ("FDCA"), including ensuring that defendant does not sell tainted sexual enhancement products or other unapproved new drugs under the FDCA, defendant shall, at a minimum:

a)      Before selling or otherwise distributing any brand of any ingestible, sublingual, or topical product purporting to affect the structure or function of human sex organs, or to improve sexual performance, or otherwise provide sexual enhancement (collectively, "Sexual Enhancement Products");

i)      obtain a certificate of analysis ("COA") from any supplier of such Sexual Enhancement Products documenting the ingredients in those products; or,

ii)      retain an independent expert who, by reason of background, training, education, and experience, is qualified to analyze the contents of Sexual Enhancement Products, to perform such analyses.

b)      Review the COAs and/or reports from the independent expert to ensure that the labeling accurately reflects the ingredients for each brand and type of Sexual Enhancement Products that defendant sells;

c)      Regularly monitor announcements by the Food and Drug Administration ("FDA") posted to the agency's website regarding tainted products, so that defendant does not engage in the

1

distribution of any products identified by the FDA as being in violation of the FDCA; and

       d)   Develop and follow a written recall procedure and maintain records of any such recalls.

    2.   Without waiving any rights, defendant and its managers and employees will respond to any inquiries by the government pertaining to a product being sold by defendant within fifteen (15) business days, including, but not limited to, providing any documentation developed by defendant in accordance with Paragraph 1.

    3.   Defendant shall not distribute any drug, as defined in 21 U.S.C. § 321(g), that fails to comply with the FDCA.

    4.   FDA representatives shall be permitted, without prior notice, to make inspections of defendant's locations, and all equipment, materials, and products therein, and to take any other measures necessary to monitor and ensure continuous compliance with the terms of this agreement. Such inspections may, at FDA's discretion, include the taking of photographs and samples, and the examination and copying of all records that relate to defendant's products, to determine continuing compliance with the terms of this agreement. Such inspection authority granted by this agreement is apart from, and in addition to, the authority to make inspections under 21 U.S.C. § 374.

    5.   All terms of this agreement are apart from, and in addition to, any existing authorities of the government or obligations of defendant under federal law, including, but not limited to, Title 21, United States Code Sections 301-2252; Title 21, Code of Federal Regulations, Parts 1-1499; Title 42, United

States Code, Sections 1-300mm-61; and Title 42, Code of Federal Regulations, Parts 1-1999.