```
                                          FILED
                                  CLERK, U.S. DISTRICT COURT

                                  06/17/2020

                                  CENTRAL DISTRICT OF CALIFORNIA
                                  BY: _____ AP _____ DEPUTY
```

1   NICOLA T. HANNA
    United States Attorney
2   BRANDON D. FOX
    Assistant United States Attorney
3   Chief, Criminal Division
    MATTHEW W. O'BRIEN (Cal. Bar No. 261568)
4   Assistant United States Attorney
    Environmental and Community Safety Crimes Section
5        1300 United States Courthouse
         312 North Spring Street
6        Los Angeles, California 90012
         Telephone: (213) 894-8644
7        Facsimile: (213) 894-0141
         E-mail:   Matthew.O'Brien@usdoj.gov
8
    Attorneys for Plaintiff
9   UNITED STATES OF AMERICA

10                  UNITED STATES DISTRICT COURT

11            FOR THE CENTRAL DISTRICT OF CALIFORNIA

12  UNITED STATES OF AMERICA,        No. CR 2:20-cr-00234-DMG

13            Plaintiff,             PLEA AGREEMENT FOR DEFENDANT
                                     DIPAKKUMAR PATEL
14            v.

15  ROYAL TRADING, INC.,
      Aka "Royal Adult Video," and
16  DIPAKKUMAR PATEL,
      aka "Dipak Patel,"
17
              Defendants.
18

19        1.   This constitutes the plea agreement between defendant

20  DIPAKKUMAR PATEL, aka "Dipak Patel" ("defendant"), and the United

21  States Attorney's Office for the Central District of California (the

22  "USAO") in the above-captioned case.  This agreement is limited to

23  the USAO and cannot bind any other federal, state, local, or foreign

24  prosecuting, enforcement, administrative, or regulatory authorities.

25                      DEFENDANT'S OBLIGATIONS

26        2.   Defendant agrees to:

27             a.   At the earliest opportunity requested by the USAO and

28  provided by the Court, appear and plead guilty to the single-count

information in this matter, in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with a violation of Title 18, United States Code, Section 371, conspiracy to commit an offense against the United States, namely, introducing misbranded drugs into interstate commerce, in violation of 21 U.S.C. §§ 331(a), 352, 333(a)(1), a Class A misdemeanor offense.

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with Pretrial Services, the United States Probation Office, and the Court.

g.   Make restitution and not seek the discharge of any restitution obligation, in whole or in part, in any present or future bankruptcy proceeding.

h.   Be jointly and severally liable for paying any fine that the Court orders for co-defendant ROYAL TRADING, INC.

i.   Pay the applicable special assessment at or before the time of sentencing unless defendant lacks the ability to pay and prior to sentencing submits a completed financial statement on a form to be provided by the USAO.

2

j.    Recommend and advocate to the Court that defendant be sentenced as provided in paragraphs 12 and 13.

<u>THE USAO'S OBLIGATIONS</u>

3.    The USAO agrees to:

a.    Not contest facts agreed to in this agreement.

b.    Abide by all agreements regarding sentencing contained in this agreement.

c.    At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

d.    Recommend and advocate to the Court that defendant be sentenced as provided in paragraphs 12 and 13.

<u>NATURE OF THE OFFENSE</u>

4.    Defendant understands that for defendant to be guilty of the crime charged in the single-count information, that is, conspiracy, in violation of Title 18, United States Code, Section 371, the following must be true: (1) beginning on or about an unknown date, and ending on or about January 30, 2017, there was an agreement between two or more persons to introduce and cause the introduction of misbranded drugs into interstate commerce, in violation of 21 U.S.C. §§ 331(a), 352, and 333(a)(1); (2) defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and (3) one of the members of the conspiracy performed at least one overt act for the purpose of

carrying out the conspiracy, with agreement on a particular overt act that was committed.

### PENALTIES AND RESTITUTION

5.    Defendant understands that the statutory maximum sentence that the Court can impose for a misdemeanor violation of Title 18, United States Code, Section 371, is:  one year of imprisonment; a one-year period of supervised release or a five-year period of probation; a fine of $100,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $25.

6.    Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

7.    Defendant understands that defendant will be required to pay full restitution to the victim(s) of the offense to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any

losses suffered by that victim as a result of any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty.

8.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that once the court accepts defendant's guilty plea, it may be a federal felony for defendant to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

9.   Defendant understands that, if defendant is not a United States citizen, the conviction in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future.  The court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony conviction in this case.  Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty plea.

FACTUAL BASIS

10.   Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 12 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

At all times relevant herein, defendant owned and operated co-defendant ROYAL TRADING, INC. ("ROYAL"), based in Catonsville, Maryland.  Defendant controlled all aspects of ROYAL, including purchasing, sales, and shipping.  ROYAL's business included the distribution of male sexual enhancement pills to retail locations across the United States.

**A.   Defendant's Scheme with John Lee**

From early 2013 through early 2017, defendant purchased male sexual enhancement pills from John Lee, who manufactured and sold the pills from locations in the Central District of California.  Lee manufactured the pills using Tadalafil that he had smuggled into the United States from suppliers in China.  While the typical Cialis prescription contains 25-85 mg of Tadalafil per pill, Lee included up to 350-400 mg of Tadalafil in his pills.  None of Lee's pills had been tested or approved by the Food and Drug Administration ("FDA").  Lee also included Sildenafil, the active pharmaceutical ingredient in Pfizer, Inc.'s prescription drug Viagra, that he had smuggled into

the United States from China, as an ingredient in the male sexual enhancement pills that he supplied to defendant.

Lee did not disclose the presence of Tadalafil (or Sildenafil) on the packaging of the pills that he supplied to defendant. While the packaging differed somewhat for each of the pill brands, each contained basically the same text in its labeling. All of the labels for the pills that LEE supplied to defendant stated "no prescription necessary" and listed as ingredients a "proprietary blend" of 13 specified herbal ingredients, plus a "special blend." None of the labels disclosed that the pills contained Tadalafil or that the pills were drugs for which a prescription was necessary.

Defendant typically purchased three types of pills from LEE: white pills, gold pills, and silver pills. Each color pill had a different brand name, strength, and price (white was the weakest and cheapest; silver was the strongest and most expensive). When the FDA announced that one of Lee's pill brands was tainted because it contained undisclosed active pharmaceutical ingredients (including Tadalafil), Lee would begin manufacturing the same colored pill but with a different brand name. Thus, while the brand names of Lee's pills changed over the years, the formulas for the white, gold, and silver pills remained the same. For example:

- After the FDA announced in December 2015 that Lee's white "X Again" pills were tainted because they contained undisclosed Tadalafil, defendant began buying a replacement brand of pills from Lee, branded "X Monster," which had the same formula and price as the tainted "X Again" pills and similar labeling that failed to disclose the presence of Tadalafil.

- After the FDA announced in August 2016 that Lee's gold "Master Zone" pills were tainted because they contained undisclosed Tadalafil, defendant began buying a replacement gold pill from Lee, branded "Royal Master," which had the same formula and price as the tainted "Master Zone" pills and similar labeling that failed to disclose the presence of Tadalafil.

- After the FDA announced in August 2016 that Lee's silver "One More Knight" pills were tainted because they contained undisclosed Tadalafil, defendant began buying a replacement silver pill from Lee, branded "Own the Knight," which had the same formula and price as the tainted "One More Knight" pills and similar labeling that failed to disclose the presence of Tadalafil.

Pursuant to requests from defendant, Lee shipped the following quantities of misbranded pills from the Central District of California to defendant in Catonsville, Maryland:

| Date | White Pills ("X Again" & "X Monster") | Gold Pills ("Master Zone" & "Royal Master") | Silver Pills ("One More Knight" & "Own the Knight") |
|---|---|---|---|
| 5/15/2013 | 1,200 | 1,200 | |
| 6/14/2013 | | 425 | |
| 7/2/2013 | | 1,200 | |
| 7/8/2013 | | 1,200 | |
| 7/9/2013 | 1,800 | | |
| 8/12/2013 | | 1,800 | |
| 10/2/2013 | 600 | 1,200 | |
| 3/26/2014 | | 600 | 600 |
| 5/7/2014 | 600 | | 1,200 |
| 7/15/2014 | | 1,200 | |
| 8/14/2014 | 1,200 | | |
| 10/6/2014 | | | 1,200 |
| 12/29/2014 | 600 | 1,200 | 1,800 |
| 12/3/2015 | 600 | | 1,200 |

| Date | White Pills ("X Again" & "X Monster") | Gold Pills ("Master Zone" & "Royal Master") | Silver Pills ("One More Knight" & "Own the Knight") |
|---|---|---|---|
| 1/6/2016 | 1,200 | | 600 |
| 2/4/2016 | 3,000 | | |
| 2/24/2016 | | 1,200 | 1,200 |
| 4/13/2016 | | | 1,200 |
| 6/7/2016 | 1,200 | | 1,200 |
| 6/13/2016 | 600 | | |
| 7/14/2016 | | | 1,200 |
| 7/26/2016 | 1,800 | | 1,200 |
| 8/18/2016 | | | 1,800 |
| 8/26/2016 | | 1,800 | 1,200 |
| 9/15/2016 | | | 1,100 |
| 10/6/2016 | 1,200 | | |
| 10/10/2016 | 1,200 | | |
| 10/13/2016 | 3,000 | | |
| 10/28/2016 | 600 | | 1,200 |
| 11/1/2016 | 600 | | |
| 11/7/2016 | 1,200 | | |
| 1/5/2017 | | | 1,200 |
| 1/13/2017 | | | 600 |
| 1/23/2017 | | | 600 |
| 1/30/2017 | | | 600 |

In total, from 2013 through February 2017, defendant purchased at least 82,100 misbranded pills from Lee for approximately $188,595. Defendant resold these pills to retail locations across the United States. Defendant's gross gain on his resales of these pills was at least $64,122. Defendant knew, or should have known, that all of the pills that he bought from Lee were misbranded and contained undisclosed Tadalafil.

On July 18, 2017, Lee called defendant and apologized for being out of touch but said that he had had an issue with the FDA posting all of his products on its website. When Lee told defendant that he

would have new products available soon, defendant said that he was interested.  On another call on September 19, 2017, Lee told defendant that he was having problems importing Tadalafil from China, but that he would soon have the "same three items."  In response, defendant, on behalf of ROYAL, expressed interest in buying Lee's pills once he knew the names and details.

**B.   Defendant's Smuggling Scheme**

In early 2018, a federal agent informed defendant that Lee's pills were misbranded because they contained Tadalafil and Sildenafil and he should no longer distribute misbranded pills.

No later than November 2018, defendant began ordering large quantities of male sexual enhancement products from a supplier in India so that he could distribute them to his retail clients in the United States.  The products included Kamagra pills and gels, which contained the drugs Sildenafil and Dapoxetine.  Products containing Sildenafil or Dapoxetine are drugs that require a prescription and supervision from a licensed physician in the United States. Defendant intended to sell the Kamagra products to his retail clients so that they could sell them to consumers, as he had done with Lee's misbranded pills.  Kamagra products are legal in India but are prohibited to import, sell, or distribute in the United States, as the FDA made clear in public announcements in 2009 and 2017.

The packaging for the Super Kamagra pills that defendant ordered stated that each of the pills contained 100 milligrams of Sildenafil and 60 milligrams of Dapoxetine.  The packaging for the Kamagra "Oral Jelly" packs that defendant ordered stated that they each contained 100 milligrams of Sildenafil with flavors including "Cola, Apricot, Peach, Passion Fruit, Coconut, Mixed Fruits, [and] Honey."

Statements on the package's directions for use included "Use strictly under Medical supervision" and "Dosage:  As directed by the Physician."

Defendant also ordered "Sexforce Sildenafil Oral Jelly," another male sexual enhancement product that is legal in India but illegal in the United States.  The packaging on the Sexforce boxes as well as the individual 100 milligram "Oral Jelly" packs that defendant ordered stated "Rx," "contains Sildenafil citrate USP," "Equivalent to Sildenafil 100mg," and "Dosage:  As directed by the physician." The packs came in seven flavors:  mango, mint, strawberry, chocolate, lemon, orange, and cherry.

The government seized the following six shipments of Kamagra and Sexforce products sent from defendant's supplier in India to defendant in Maryland:

| Seizure Date | Invoice Date | Manifested As | Actual Contents | Parcel Weight | Declared Value | Appraised Value |
|---|---|---|---|---|---|---|
| 11/21/2019 | Unknown | "Health supplement" | 4,000 Super Kamagra pills | 5 kg | Unknown | $6,254 |
| 12/3/2019 | 11/25/2019 | "Health supplement" | 2,100 Kamagra "Oral Jelly" packs | 16 kg | $150 | $9,765 |
| 1/2/2020 [two parcels] | 12/20/2019 & 12/21/2019 | "Health supplement" | 4,200 Kamagra "Oral Jelly" packs | 16 kg & 16 kg | $150 & $150 | $19,530 |
| 3/4/2020 | 2/22/2020 | "Health supplement" | 1,960 Sexforce "Oral Jelly" packs | 16 kg | $120 | $9,114 |
| 3/5/2020 | 2/26/2020 | "Health supplement" | 2,100 Kamagra "Oral Jelly" packs | 16 kg | $150 | $9,765 |

On December 18, 2019, CBP mailed a seizure notice to ROYAL, informing defendant of the seizure on November 21, 2019.  The notice specified that the shipment has been "seized under the provisions of 19 U.S.C. (United States Code) § 1595a(c)(1), Merchandise Imported Contrary to Law, and is subject to forfeiture under 21 U.S.C. § 881 for underlying violations of 21 U.S.C. § 952(b), Importation of Controlled Substances, 21 U.S.C. § 829(b), Prescription Drugs, and 21 U.S.C. § 381(a), Imports and Exports."  Despite receiving the seizure notice (and knowing that several of his recent orders had been seized), defendant continued to order and import banned substances (including Kamagra and Sexforce products) in 2020, when his supplier in India shipped at least six additional parcels to him, each of which was manifested as "Health supplements" weighing 14 or 16 kilograms.

The six seized shipments were a small fraction of the Kamagra and Sexforce products that defendant ordered from his supplier in India.  Between November 2018 and March 2020, defendant's supplier in India shipped at least 98 packages to defendant, each of which was manifested as "Kamagra oral jelly," "Health supplement (oral jelly)," or "Health supplement."  Like the six seized packages, most of the other packages' declared weight was 16 kilograms.  Like the six seized packages, most of the other packages' declared value was $150.

Defendant knew that most, if not all, of the consumers buying the Kamagra and Sexforce products that he was smuggling into the United States would be using the products without the supervision of a physician.

SENTENCING FACTORS

11.   Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

12.   Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 6 | [U.S.S.G. § 2N2.1(a)] |
| Acceptance of Responsibility: | -2 | [U.S.S.G. § 3E1.1(a)] |
| Total Offense Level: | 4 | |

The USAO will agree to a two-level downward adjustment for acceptance of responsibility (and, if applicable, move for an additional one-level downward adjustment under U.S.S.G. § 3E1.1(b)) only if the conditions set forth in paragraph 3 are met.  Subject to paragraph 25 below, defendant and the USAO agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments, or departures relating to the offense level be imposed.  Defendant agrees, however, that if, after signing this agreement but prior to sentencing, defendant were to commit an

act, or the USAO were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the USAO, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set forth in that section.

13.   Defendant and the USAO agree that, taking into account the factors listed in 18 U.S.C. § 3553(a)(1)-(7) and the relevant sentencing guideline factors set forth above, an appropriate disposition of this case is that the court impose a non-custodial sentence of: (a) $25 special assessment; (b) a 5-year term of probation with conditions to be fixed by the Court, including 700 hours of community service; and (c) a $100,000 fine, which defendant shall pay by certified check(s) or wire transfer(s) to the Clerk of the United States District Court for the Central District of California (defendant shall provide confirmation of the completed payment(s) to the USAO).  Defendant also agrees that (1) he shall be jointly and severally liable for any fine that the Court orders for co-defendant ROYAL TRADING, INC; and (2) he does not deserve an offset of his criminal fine pursuant to Section 8C3.4 of the Guidelines due to any fine that the Court orders for co-defendant ROYAL TRADING, INC.

14.   The parties agree that they will recommend that the court impose the sentence set forth in paragraphs 12 and 13 above, and that they will not seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments, departures, or variances in sentence pursuant to the Sentencing Guidelines and/or the factors set forth in 18 U.S.C.

§ 3553(a) be imposed, or that the court impose a sentence other than what has been stipulated to by the parties herein.

15.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

16.  Defendant understands that by pleading guilty, defendant gives up the following rights:

a.  The right to persist in a plea of not guilty.

b.  The right to a speedy and public trial by jury.

c.  The right to be represented by counsel -- and if necessary have the court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the court appoint counsel -- at every other stage of the proceeding.

d.  The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.  The right to confront and cross-examine witnesses against defendant.

f.  The right to testify and to present evidence in opposition to the charge, including the right to compel the attendance of witnesses to testify.

g.  The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.  Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

15

## WAIVER OF APPEAL OF CONVICTION

17.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

## LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

18.   Defendant agrees that, provided the Court imposes a total sentence on the count of conviction of no more than the statutory maximum, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in General Orders 18-10 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7); and any conditions

of probation or supervised release agreed to by defendant in paragraphs 2 and 13 above.

19.  The USAO agrees that, provided all portions of the sentence are at or below the statutory maximum specified above, the USAO gives up its right to appeal any portion of the sentence.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

20.  Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## EFFECTIVE DATE OF AGREEMENT

21.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

## BREACH OF AGREEMENT

22.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required

certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

23.  Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then:

a.  Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.  Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.  Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such

18

statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

COURT AND PROBATION OFFICE NOT PARTIES

24.  Defendant understands that the Court and the United States Probation Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

25.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 12 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

26.   Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

27.   Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

//
//
//
//
//
//
//
//
//
//
//
//

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

28.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

NICOLA T. HANNA
United States Attorney


/s/                                           June 16, 2020
_____              _____
MATTHEW W. O'BRIEN                            Date
Assistant United States Attorney

*Dipak C. Patel*                              6-12-20
_____              _____
DIPAKKUMAR PATEL                             Date
Defendant

*M. A. Bourgeois*                             6/15/2020
_____              _____
JOHN A. BOURGEOIS                            Date
Attorney for Defendant DIPAKKUMAR
PATEL




CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences

21

1    of entering into this agreement.  No promises, inducements, or
2    representations of any kind have been made to me other than those
3    contained in this agreement.  No one has threatened or forced me in
4    any way to enter into this agreement.  I am satisfied with the
5    representation of my attorney in this matter, and I am pleading
6    guilty because I am guilty of the charge and wish to take advantage
7    of the promises set forth in this agreement, and not for any other
8    reason.

9    _Dipak  G. patel_____        _6-12-20_____
10   DIPAKKUMAR PATEL                          Date
     Defendant

11
12
13
14
15              CERTIFICATION OF DEFENDANT'S ATTORNEY
16        I am DIPAKKUMAR PATEL's attorney.  I have carefully and
17   thoroughly discussed every part of this agreement with my client.
18   Further, I have fully advised my client of his rights, of possible
19   pretrial motions that might be filed, of possible defenses that might
20   be asserted either prior to or at trial, of the sentencing factors
21   set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines
22   provisions, and of the consequences of entering into this agreement.
23   To my knowledge: no promises, inducements, or representations of any
24   kind have been made to my client other than those contained in this
25   agreement; no one has threatened or forced my client in any way to
26   enter into this agreement; my client's decision to enter into this
27   agreement is an informed and voluntary one; and the factual basis set

28

1  forth in this agreement is sufficient to support my client's entry of

2  a guilty plea pursuant to this agreement.

3

4  _____          6/15/2020
   JOHN A. BOURGEOIS                         _____
   Attorney for Defendant DIPAKKUMAR         Date

5  PATEL

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE CENTRAL DISTRICT OF CALIFORNIA

10  UNITED STATES OF AMERICA,          CR No.

11            Plaintiff,              I N F O R M A T I O N

12            v.                       [18 U.S.C. § 371: Conspiracy]

13  ROYAL TRADING, INC.,               [CLASS A MISDEMEANOR]
      aka "Royal Adult Video," and
14  DIPAKKUMAR PATEL,
      aka "Dipak Patel,"

15

16            Defendants.

17       The United States Attorney charges:

18                      [18 U.S.C. § 371]

19                      [ALL DEFENDANTS]

20  A.    INTRODUCTORY ALLEGATIONS

21       At times relevant to this Information:

22       1.   Defendant ROYAL TRADING, INC., also known as ("aka") "Royal

23  Adult Video" ("ROYAL"), was located at 1030 Leslie Avenue in

24  Catonsville, Maryland.  Defendant ROYAL distributed male sexual

25  enhancement pills to retail locations across the United States.

26       2.   Defendant DIPAKKUMAR PATEL, aka "Dipak Patel"("PATEL"), was

27  the owner and manager of defendant ROYAL and held himself out as the

28

person most responsible for the day-to-day operations of defendant ROYAL.

3.    Co-conspirator #1 supplied male sexual enhancement pills to defendants ROYAL and PATEL.  Co-conspirator #1 owned and operated several businesses between 2011 and 2017 for the purpose of manufacturing and distributing male sexual enhancement pills that he marketed as herbal remedies but that in fact contained undisclosed Tadalafil, an active pharmaceutical ingredient.  Each of Co-conspirator #1's pill businesses was located in the Central District of California.

4.    Co-conspirator #2 worked for Co-conspirator #1 as an office assistant from approximately 2014 to 2017.

B.    THE OBJECT OF THE CONSPIRACY

5.    Beginning on a date unknown to the United States Attorney and continuing to on or about January 30, 2017, in Los Angeles County, within the Central District of California, and elsewhere, defendants ROYAL and PATEL, together with others known and unknown to the United States Attorney, including Co-conspirators #1 and #2, knowingly conspired and agreed to introduce and cause the introduction of misbranded drugs into interstate commerce, in violation of Title 21, United States Code, Sections 331(a), 352, 333(a)(1).

C.    MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

6.    The object of the conspiracy was to be accomplished, in substance, as follows:

a.    Co-conspirator #1 would import shipments of bulk Tadalafil from suppliers in China.

2

b.   After Co-conspirator #1 received the bulk Tadalafil in the Central District of California, he would cause the bulk Tadalafil to be manufactured into pills that Co-conspirators #1 and #2 would sell in packages whose labeling did not disclose the presence of Tadalafil, and whose labeling falsely stated that no prescription was necessary, even though the pills were in fact prescription drugs.

c.   Defendants ROYAL and PATEL would place orders for the misbranded pills with Co-conspirators #1 and #2.

d.   Co-conspirator #2 would fulfill the orders placed by defendants ROYAL and PATEL by shipping the misbranded drugs from the Central District of California to defendants ROYAL and PATEL in Catonsville, Maryland.

e.   When the Food and Drug Administration ("FDA") announced that a certain brand of Co-conspirator #1's pills distributed by defendants ROYAL and PATEL was tainted because the pills contained undeclared Tadalafil, defendants ROYAL and PATEL would begin buying a replacement brand of pills, with an identical formula (including Tadalafil) but different brand name, from Co-conspirators #1 and #2.  For example:

i.   After the FDA announced in December 2015 that Co-conspirator #1's white "X Again" pills were tainted because they contained undisclosed Tadalafil, defendants ROYAL and PATEL would begin buying a replacement brand of pills from Co-conspirators #1 and #2, branded "X Monster," which had the same formula and price as the tainted "X Again" pills and similar labeling that failed to disclose the presence of Tadalafil.

ii.   After the FDA announced in August 2016 that Co-conspirator #1's gold "Master Zone" pills were tainted because they

3

contained undisclosed Tadalafil, defendants ROYAL and PATEL would begin buying a replacement gold pill from Co-conspirators #1 and #2, branded "Royal Master," which had the same formula and price as the tainted "Master Zone" pills and similar labeling that failed to disclose the presence of Tadalafil.

iii. After the FDA announced in August 2016 that Co-conspirator #1's silver "One More Knight" pills were tainted because they contained undisclosed Tadalafil, defendants ROYAL and PATEL would begin buying a replacement silver pill from Co-conspirators #1 and #2, branded "Own the Knight," which had the same formula and price as the tainted "One More Knight" pills and similar labeling that failed to disclose the presence of Tadalafil.

f.   Defendants ROYAL and PATEL would resell and distribute the replacement pills to retail locations across the United States, despite knowing that the pills had the same formula and misleading packaging as the misbranded pills that the FDA had declared were tainted.

D.   <u>OVERT ACTS</u>

7.   On or about the following dates, in furtherance of the conspiracy and to accomplish its object, defendants ROYAL and PATEL, and others both known and unknown to the United States Attorney, including Co-conspirators #1 and #2, committed various overt acts within the Central District of California and elsewhere, including, but not limited to, the following:

//

//

//

//

Overt Acts Nos. 1 Through 35: On or about the following dates, pursuant to orders made by defendants ROYAL and PATEL, Co-conspirators #1 and #2 shipped the following quantities of misbranded pills from the Central District of California to defendants ROYAL and PATEL in Catonsville, Maryland:

| Overt Act | Date | White Pills ("X Again" & "X Monster") | Gold Pills ("Master Zone" & "Royal Master") | Silver Pills ("One More Knight" & "Own the Knight") |
|---|---|---|---|---|
| 1 | 5/15/2013 | 1,200 | 1,200 | |
| 2 | 6/14/2013 | | 425 | |
| 3 | 7/2/2013 | | 1,200 | |
| 4 | 7/8/2013 | | 1,200 | |
| 5 | 7/9/2013 | 1,800 | | |
| 6 | 8/12/2013 | | 1,800 | |
| 7 | 10/2/2013 | 600 | 1,200 | |
| 8 | 3/26/2014 | | 600 | 600 |
| 9 | 5/7/2014 | 600 | | 1,200 |
| 10 | 7/15/2014 | | 1,200 | |
| 11 | 8/14/2014 | 1,200 | | |
| 12 | 10/6/2014 | | | 1,200 |
| 13 | 12/29/2014 | 600 | 1,200 | 1,800 |
| 14 | 12/3/2015 | 600 | | 1,200 |
| 15 | 1/6/2016 | 1,200 | | 600 |
| 16 | 2/4/2016 | 3,000 | | |
| 17 | 2/24/2016 | | 1,200 | 1,200 |
| 18 | 4/13/2016 | | | 1,200 |
| 19 | 6/7/2016 | 1,200 | | 1,200 |
| 20 | 6/13/2016 | 600 | | |
| 21 | 7/14/2016 | | | 1,200 |
| 22 | 7/26/2016 | 1,800 | | 1,200 |
| 23 | 8/18/2016 | | | 1,800 |
| 24 | 8/26/2016 | | 1,800 | 1,200 |
| 25 | 9/15/2016 | | | 1,100 |
| 26 | 10/6/2016 | 1,200 | | |
| 27 | 10/10/2016 | 1,200 | | |
| 28 | 10/13/2016 | 3,000 | | |
| 29 | 10/28/2016 | 600 | | 1,200 |

| Overt Act | Date | White Pills ("X Again" & "X Monster") | Gold Pills ("Master Zone" & "Royal Master") | Silver Pills ("One More Knight" & "Own the Knight") |
|---|---|---|---|---|
| 30 | 11/1/2016 | 600 | | |
| 31 | 11/7/2016 | 1,200 | | |
| 32 | 1/5/2017 | | | 1,200 |
| 33 | 1/13/2017 | | | 600 |
| 34 | 1/23/2017 | | | 600 |
| 35 | 1/30/2017 | | | 600 |

NICOLA T. HANNA
United States Attorney


BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

JOSEPH O. JOHNS
Assistant United States Attorney
Chief, Environmental and
Community Safety Crimes Section

MARK A. WILLIAMS
Assistant United States Attorney
Deputy Chief, Environmental and
Community Safety Crimes Section

MATTHEW W. O'BRIEN
Assistant United States Attorney
Environmental and Community
Safety Crimes Section